1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

GERALD VON TOBEL,

                    Plaintiff,

    v.

DR. JOHNS, *et al.,*

                  Defendants.

Case No. 3:17-cv-00022-RCJ-CLB

**REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE[1]**

       This case involves a civil rights action filed by Plaintiff Gerald Von Tobel, ("Von Tobel"), against Defendants Romeo Aranas ("Aranas"), Candace Rambur ("Brockway"), Marsha Johns ("Johns"), and Theresa Wickham ("Wickham") (collectively referred to as "Defendants").  Currently pending before the court is Defendants' motion for summary judgment.  (ECF Nos. 56, 58).[2]  Von Tobel responded (ECF No. 77), and Defendants replied (ECF No. 80).  Having thoroughly reviewed the record and papers, the court recommends Defendants' motion for summary judgment (ECF No. 56) be granted.[3]

**I.    BACKGROUND AND PROCEDURAL HISTORY**

       Von Tobel is an inmate currently in the custody of the Nevada Department of Corrections ("NDOC"), housed at the Lovelock Correctional Center ("LCC").  (*See* ECF No. 49, Von Tobel's Change of Address).  The events in question occurred while Von Tobel was housed at the Northern Nevada Correctional Center ("NNCC").  (*See* ECF No.

---

[1]    This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]    ECF No. 58 consists of sealed exhibits filed in support of the motion for summary judgment.

[3]    Von Tobel filed two motions to compel Defendants to allow him to examine sealed medical records.  (*See* ECF Nos. 73 and 75).  Defendants allowed Von Tobel to examine the records prior to Von Tobel's response.  (*See* ECF No. 79-1 at 1; *see also* ECF No. 77).  Accordingly, Von Tobel's motions to compel are moot.

1   8 at 1).  On March 5, 2018, proceeding *pro se*, Von Tobel submitted his First Amended
2   Complaint ("FAC") pursuant to 42 U.S.C. § 1983, which he signed and verified, under
3   penalty of perjury, acknowledging the facts and information contained in the complaint
4   were "true and correct."  (ECF No. 8 at 14).  Pursuant to 28 U.S.C. § 1915A(a), the court
5   screened Von Tobel's FAC on March 11, 2019 and allowed Von Tobel to proceed on
6   portions of his Eighth Amendment deliberate indifference to serious medical needs
7   against Aranas, Brockway, Johns, and Wickham.  (ECF No. 11 at 10).[4]

8       A.      Von Tobel's Deliberate Indifference Claims[5]

9       Von Tobel's FAC, in relevant part, alleges the following: In December 2014, Von
10  Tobel began experiencing pain and numbness in both hands.  (ECF No. 8 at 6).  Shortly
11  thereafter, in January and February of 2015, the numbness became worse, and combined
12  with swelling, Von Tobel's hands began to "lock up", making routine tasks difficult or
13  impossible.  (*Id.*)   After examining Von Tobel's hands in March 2015, Defendant Johns
14  told Von Tobel Dr. Long would have more expertise on the issue and re-scheduled Von
15  Tobel with Dr. Long.  (*Id.*)  Subsequently, Von Tobel kited Dr. Johns twice in April 2015
16  and Dr. Long once in May 2015 and was then seen in June 2015 by Dr. Walls.  (*Id.*)  Von
17  Tobel alleges non-defendant "Nurse Melissa" prevented Dr. Walls from providing steroid
18  injections because she did not have the steroid readily available to administer.  (*Id.*)  Von
19  Tobel then kited NDOC medical once in June 2015 and Johns once in July 2015 and was
20  seen in September 2015 by Dr. Long.  (*Id.* at 6-7).

21      Von Tobel alleges at his September 2015 examination, Dr. Long informed him the
22  delay in steroid injections rendered the injections useless and Von Tobel would instead
23  need surgery to fix his hands.  (*Id.* at 7).  After submitting a kite and an informal grievance

24

25  [4]     Von Tobel also named multiple other defendants in his complaint.  (ECF No. 8 at
26  2-4).    However, the court dismissed those defendants, with prejudice, because
    amendment would be futile.  (ECF No. 11 at 10).  The court further dismissed Defendant
27  David Evert, without prejudice, pursuant to motion.  (*See* ECF No. 53).

28  [5]     The facts as stated herein are taken from the allegations asserted in the Complaint
    unless noted otherwise.

1    in December 2015, Von Tobel submitted another grievance (ID No. 2006-30-13715)

2    alleging his low-dose back medication was insufficient to relieve him of his hand pain, but

3    Defendants Brockway, Wickham, and Aranas denied Von Tobel's informal, first, and

4    second level grievances, respectively.  (*Id.*)  On February 1, 2016, Von Tobel alleges Dr.

5    Long again told him injections would cause him harm and Dr. Long scheduled Von Tobel

6    for surgery.  (*Id.*)  Von Tobel kited Johns twice in early February 2016.  (*Id.* at 8).  In

7    September 2016, Dr. Wall allegedly again told Von Tobel he needed surgery as a result

8    of the delay in administering the steroid injections.  (*Id.*)

9         Between November 2016 and January 2017, Von Tobel submitted five medical

10   kites, one of which requested to see Johns.  (*Id.*)  On July 13, 2017, Johns scheduled

11   Von Tobel to see Dr. Walls, and on November 16, 2017, Von Tobel was again seen by

12   Johns.  (*Id.*)  Von Tobel alleges Johns told him his elective surgery was not important

13   enough for her to care about and that he would eventually adapt to prison life with locked

14   hands.  (*Id.*)  That same day, Dr. Doyle cleared Von Tobel for surgery on his hands and

15   fingers.  (*Id.*)  In late November 2017, Von Tobel kited requesting to be seen by NDOC

16   medical, but on November 27, 2017, Dr. Naughton left early and failed to see Von Tobel.

17   (*Id.* at 10).

18        In February 2018, Von Tobel kited NDOC medical about why his surgery had not

19   been scheduled in over two years, and on March 5, 2018, Von Tobel filed the operative

20   complaint.  (*Id.* at 10, 14).  Von Tobel seeks the following remedy: (1) Medical treatment

21   for Von Tobel's hands; (2) Compensatory damages in excess of $200,000.00; (3) Punitive

22   damages in excess of $100,000.00; (4) Pain and suffering damages in excess of

23   $75,000.00; (5) Declaratory relief; (6) Injunctive relief; and (7) Court costs and other

24   expenses related to this action.  (*Id.* at 14).

25        **B.    Defendants' Motion for Summary Judgment**

26        On April 4, 2020, Defendants filed a motion for summary judgment (ECF No. 56).

27   Defendants argue they are entitled to summary judgment because Defendants were not

28   deliberately indifferent to Von Tobel, and alternatively, they are entitled to qualified

1  immunity.  (ECF No. 56 at 5-13).  Von Tobel opposed the motion, (ECF No. 77), and

2  Defendants replied (ECF No. 80).  The recommended disposition follows.

3  **II.    LEGAL STANDARD**

4      Summary judgment should be granted when the record demonstrates that "there

5  is no genuine issue as to any material fact and the movant is entitled to judgment as a

6  matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "[T]he substantive

7  law will identify which facts are material.  A dispute is "genuine" only where a reasonable

8  jury could find for the nonmoving party.  *Id.*  Conclusory statements, speculative opinions,

9  pleading allegations, or other assertions uncorroborated by facts are insufficient to

10  establish a genuine dispute.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

11  Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).

12      Summary judgment proceeds in burden-shifting steps.  A moving party who does

13  not bear the burden of proof at trial "must either produce evidence negating an essential

14  element of the nonmoving party's claim or defense or show that the nonmoving party

15  does not have enough evidence of an essential element" to support its case.  *Nissan Fire*

16  *& Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Ultimately, the

17  moving party must demonstrate, on the basis of authenticated evidence, that the record

18  forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as

19  to disputed material facts.  *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285

20  F.3d 764, 773 (9th Cir. 2002).  The court views all evidence and any inferences arising

21  therefrom in the light most favorable to the nonmoving party.  *Colwell v. Bannister*, 763

22  F.3d 1060, 1065 (9th Cir. 2014).

23      Where the moving party meets its burden, the burden shifts to the nonmoving party

24  to "designate specific facts demonstrating the existence of genuine issues for trial."  *In re*

25  *Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).  "This burden

26  is not a light one," and requires the nonmoving party to "show more than the mere

27  existence of a scintilla of evidence. . . .  In fact, the non-moving party must come forth

28  with evidence from which a jury could reasonably render a verdict in the non-moving

1  party's favor." *Id.* (citations omitted).  The nonmoving party may defeat the summary
2  judgment motion only by setting forth specific facts that illustrate a genuine dispute
3  requiring a factfinder's resolution. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.

4      For purposes of opposing summary judgment, the contentions offered by a *pro se*
5  litigant in motions and pleadings are admissible to the extent that the contents are based
6  on personal knowledge and set forth facts that would be admissible into evidence and the
7  litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*,
8  393 F.3d 918, 923 (9th Cir. 2004).

9  **III.   DISCUSSION**

10     **A.    Civil Rights Claims under 42 U.S.C. § 1983**

11     42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority
12 to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d
13 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)).
14 The statute "provides a federal cause of action against any person who, acting under color
15 of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290
16 (1999), and therefore "serves as the procedural device for enforcing substantive
17 provisions of the Constitution and federal statutes." *Crumpton v. Almy*, 947 F.2d 1418,
18 1420 (9th Cir. 1991).  Claims under section 1983 require a plaintiff to allege (1) the
19 violation of a federally-protected right by (2) a person or official acting under the color of
20 state law. *Warner*, 451 F.3d at 1067.  Further, to prevail on a § 1983 claim, the plaintiff
21 must establish each of the elements required to prove an infringement of the underlying
22 constitutional or statutory right.

23     **B.    Von Tobel's Deliberate Indifference to Serious Medical Needs Claim**

24     The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized
25 standards, humanity, and decency" by prohibiting the imposition of cruel and unusual
26 punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation
27 omitted).  The Amendment's proscription against the "unnecessary and wanton infliction
28 of pain" encompasses deliberate indifference by state officials to the medical needs of

1
2
3
prisoners.  *Id.* at 104 (internal quotation omitted).  It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  *Id.* at 106.

4
5
6
7
8
9
10
11
12
13
14
Courts in this Circuit employ a two-part test when analyzing deliberate indifference claims.  The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard— deliberate indifference."  *Colwell*, 763 F.3d at 1066 (internal quotation omitted).  First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

15
16
17
18
19
20
21
22
23
24
25
26
27
28
Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed.  "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment."  *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted).  However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety."  *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).  The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference.  *Colwell*, 763 F.3d at 1066.  An accidental or inadvertent failure to provide adequate care is not enough to impose liability.  *Estelle*, 429 U.S. at 105–06.  Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other . . . ."  *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).  Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care."  *Id.* at 835 (internal quotation omitted) (*see Wood v.*

1    *Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) ("[M]ere malpractice, or even gross

2    negligence" in the provision of care fails to state a deliberate indifference claim).

3         A difference of opinion between a physician and a prisoner – or between medical

4    professionals – concerning what medical care is appropriate does not amount to

5    deliberate indifference. *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing

6    *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986). Instead, the prisoner "must show

7    that the course of treatment the doctors chose was medically unacceptable under the

8    circumstances and that the defendants chose this course in conscious disregard of an

9    excessive risk to [his] health." *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012)

10   (overruled, in part, on other grounds by *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014))

11   (quoting *Jackson*, 90 F.3d at 332). A "mere delay of surgery, without more, is insufficient

12   to state a claim of deliberate medical indifference." *Shapley v. Nevada Bd. of State Prison

13   Comm'rs*, 766 F.2d 404, 406-07 (9th Cir. 1985) (finding that the failure of prison

14   authorities to respond to cumulative, repeated demands for surgery did not itself

15   constitute deliberate indifference).

16        In this case, it is undisputed Von Tobel's locking hands and inability to use his

17   hands and fingers constitute serious medical needs. *See Colwell*, 763 F.3d at 1066.

18   Therefore, the objective element is not contested. Rather, the only issue is whether there

19   is sufficient evidence to create a genuine issue of fact as to the subjective element – i.e.,

20   whether there is any evidence to establish that Defendants knew of and disregarded "an

21   excessive risk to [Von Tobel's] health and safety." *Toguchi*, 391 F.3d at 1057.

22   Defendants argue they are entitled to summary judgment because the evidentiary record

23   shows they were not deliberately indifferent to Von Tobel's medical needs. (ECF No. 56

24   at 5-13).

25        Based on the evidence before the court, Defendants have, with authenticated

26   evidence, shown that the record forecloses the possibility of a reasonable jury finding in

27   Von Tobel's favor. *Celotex*, 477 U.S. at 323. Therefore, Defendants have met their initial

28   burden on summary judgment. Accordingly, the burden shifts to Von Tobel to "designate

1    specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.*,

2    627 F.3d at 387.  Von Tobel is unable to meet his burden.

3         Although Von Tobel attached patient scheduling lists and medical kites to his

4    opposition (*See* ECF No. 77), he has failed to produce any evidence to create an issue

5    of fact as to whether Defendants were deliberately indifferent to his serious medical

6    needs. Therefore, even when viewing all facts and drawing all inferences in the light most

7    favorable to Von Tobel, the court finds summary judgment should be granted in favor of

8    Defendants on Von Tobel's deliberate indifference claim.

9              **1.    Defendants Aranas, Brockway, and Wickham**

10        Von Tobel alleges Defendants Aranas, Brockway, and Wickham were deliberately

11   indifferent to his serious medical needs because they denied grievance ID No. 2006-30-

12   13715 in late 2015 and early 2016.  (ECF No. 8 at 7).  Specifically, Von Tobel alleges

13   Defendants failed to provide him with medication for his hand pain because the low-dose

14   medications he was taking for his back pain were insufficient to combat that hand pain.

15   (*Id.*)  However, Von Tobel has offered no evidence to show Defendants failed to provide

16   him with pain medication.

17        Moreover, Defendants' evidence shows Von Tobel was given Oxycodone and

18   Tylenol three days prior to his submission of the informal grievance regarding his pain

19   medication.  (ECF No. 58-2 at 15).  Further, Von Tobel was prescribed pain medications

20   on January 5, 2016, less than three weeks after the initial filing of his informal grievance.

21   (ECF No. 58-2 at 13).[6]  By the time Defendant Aranas responded to Von Tobel's second-

22   level grievance on March 17, 2017, Von Tobel had been seen by medical providers on at

23   least eleven (11) separate dates since he submitted the informal grievance regarding his

24   pain medication.  (*See id.* at 12-13 and ECF No. 58-1 at 16-18).  During that same time

25   period, Von Tobel was prescribed or given pain medication at least five times.  (*See id.*).

26

27   _____

28   [6]     Von Tobel was prescribed Baclofen, Neurontin, and Oxycodone for pain, along with
     several other medications for a variety of symptoms.  (*See* ECF No. 58-2 at 13).

1    Thus, the undisputed evidence shows Defendants Aranas, Brockway, and Wickham did

2    not fail to provide Von Tobel with pain medication.

3        Furthermore, as to Defendants Aranas, Brockway, and Wickham, there is no

4    evidence to establish those Defendants were involved in Von Tobel's treatment in any

5    way.    Rather, the sole piece of evidence Von Tobel has pointed to indicating the

6    involvement of Defendants Aranas, Brockway, and Wickham in this matter in any capacity

7    whatsoever are the denials of Von Tobel's escalating pain medication grievance.  (ECF

8    No. 56-1 at 2).  Merely responding to Von Tobel's grievance, without more, is insufficient

9    to establish those Defendants were indifferent to Von Tobel's medical needs.  *See*

10   *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (simply reviewing or processing

11   appeals, without more, cannot create liability for prison officials under § 1983) (citing

12   *Mann v. Adams*, 855 F.2d 639, 649 (9th Cir. 1988).  Accordingly, Defendants Aranas,

13   Brockway, and Wickham are entitled to summary judgement as to Von Tobel's deliberate

14   indifference to serious medical needs claims.

15               **2.    Defendant Johns**

16       Von Tobel alleges Defendant Johns was deliberately indifferent to his serious

17   medical needs because she: (1) let him suffer without providing him pain medication for

18   his hands; (2) improperly delayed his surgery; and (3) told him his elective surgery was

19   irrelevant to her and he would be forced to adapt to prison life with locked hands.  (*See*

20   ECF No. 8).   However, Defendants' evidence shows, during the time that Von Tobel

21   claims Defendant Johns was allegedly deliberately indifferent, she prescribed or renewed

22   pain medication (or approved such prescriptions and renewals) for him at least ten (10)

23   times. (ECF No. 58-2 at 5-14).  During that same time period, Johns personally treated

24   Von Tobel at least nine times.  (ECF No. 58-1 at 6-18).  Moreover, the evidence shows

25   Von Tobel consistently was prescribed and received pain medications and attended many

26   medical appointments during the time Johns was treating him.  (*See* ECF Nos. 58-1 at 5-

27   14 and 58-2 at 6-18).

28       By contrast, Von Tobel has provided no evidence Defendant Johns delayed his

9

1  surgery, told him she did not care about his surgery on November 27, 2017, or that she

2  let him suffer needlessly to rebut Defendants' evidence or to create a genuine dispute of

3  fact on these issues.

4       Additionally, Von Tobel has provided no evidence Defendant Johns was personally

5  responsible for any delay in surgery or treatment.  *See McGuckin v. Smith*, 974 F.2d

6  1050, 1062 (9th Cir. 1992) (finding that grant of summary judgment was appropriate

7  where plaintiff failed to show defendants were individually responsible for the scheduling

8  or performing of diagnostics or surgery).  Here, Defendants' evidence shows Defendant

9  Johns referred Von Tobel to physicians with more expertise than her on multiple

10  occasions, and she further referred him to specialists.  (*See* ECF Nos. 58-1 at 5-14 and

11  58-2 at 6-18).  Moreover, Johns recommended Von Tobel receive surgery for his hands

12  and fingers. (*See* ECF No. 58-2 at 12).  Consequently, Von Tobel cannot establish Johns

13  was personally responsible for any delay in surgery or treatment.  However, to the extent

14  Von Tobel alleges Johns delayed his surgery, a "mere delay of surgery, without more, is

15  insufficient to state a claim of deliberate medical indifference."  *Shapley*, 766 F.2d at 406-

16  07.  Rather, Von Tobel must show that Johns knew of and disregarded "an excessive risk

17  to [Von Tobel's] health and safety."  *Toguchi*, 391 F.3d at 1057.  Von Tobel has provided

18  no evidence Defendant Johns disregarded any risk to his health or safety.

19       While Von Tobel alleges he should have received surgery and other doctors told

20  him he should have surgery, a difference of opinion between a physician and a prisoner

21  – or between medical professionals – concerning what medical care is appropriate does

22  not amount to deliberate indifference.  *Wilhelm*, 680 F.3d at 1122.  Instead, Von Tobel

23  "must show that the course of treatment [Johns] chose was medically unacceptable under

24  the circumstances and that [she] chose this course in conscious disregard of an

25  excessive risk to [his] health."  *Snow*, 681 F.3d at 988.  Von Tobel has provided no

26  evidence that would make such a showing.  Accordingly, Defendant Johns is entitled to

27

28

summary judgement on Von Tobel's deliberate indifference to serious medical needs claim.[7]

## IV.    CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends Defendants' motion for summary judgment (ECF No. 56) be granted.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 56) be **GRANTED**; and

**IT IS FURTHER RECOMMENDED** that Von Tobel's motions to compel (ECF Nos. 73 and 75) be **DENIED** as moot; and

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** accordingly.

**DATED**: July 23, 2020.

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[7]    Where the court determines a plaintiff's allegations fail to show a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Here, Von Tobel is unable to establish a violation of his rights under the United States Constitution.  Accordingly, there is no need to further discuss qualified immunity.